FISHER SCIENTIFIC COMPANY *v.* UNITED STATES

**No. 7878**
Entry No. 175, etc.

(Decided September 8, 1950)

*Jerome G. Clifford* for the plaintiff.

*David N. Edelstein,* Assistant Attorney General (*John J. McDermott* and *Chauncey E. Wilowski*, special attorneys), for the defendant.

RAO, Judge: These eight appeals for reappraisement, consolidated for the purpose of trial, involve the question of the proper value of certain analytical balances, and parts thereof, which were exported from Switzerland during the period between September 1948 and March 1949 and entered at the port of Pittsburgh, Pa.

The initial suit, listed as entry No. 175, reappraisement No. 172950–A, designated as the test case, covers 12 Mettler analytical balances, model No. 200 A4N. The merchandise was entered at the invoice price of 1,630 Swiss francs each, plus a Swiss turnover tax of 4 per centum. It was appraised at 2,140 Swiss francs each, net packed.

The remaining seven cases consist of so-called duress entries. All of said cases, except reappraisement No. 174683–A and reappraisement No. 175977–A, involve the same model as that covered by the test

case. In reappraisement No. 174683–A, the merchandise consists of five balances, model No. 100 A5M, which are claimed to be valued at 1,825 Swiss francs each. They were entered under duress at 2,400 Swiss francs each, and appraised as entered.

Reappraisement No. 175977–A covers special magnifiers for use with Mettler analytical balances which were appraised, as entered under duress, at 19.692 Swiss francs each, and are claimed to be dutiable at 15 Swiss francs each.

Both parties agree that foreign value is the proper basis for appraisement of the instant merchandise. The dispute arises herein over the question of whether the entered values or the appraised values constitute such foreign value. The difference between the two results from the adverse contentions of the parties as to what were the usual wholesale quantities in which said merchandise was sold or offered for sale within the meaning of section 402 (c) of the Tariff Act of 1930. That section, as amended by the Customs Administrative Act of 1938, provides as follows:

SEC. 402. VALUE.

\*　　　\*　　　\*　　　\*　　　\*　　　\*　　　\*

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale for home consumption to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

Moreover, there is no substantial disagreement concerning the fundamental facts in the case, which are to be derived almost entirely from certain documentary evidence offered by the respective parties at the time of trial. This consists of an original and a supplementary affidavit (plaintiff's exhibits 1 and 2) of one Hans H. Mettler, a director of the firm which manufactured and exported the instant merchandise; and a duly certificated report of the United States consul at Zurich, Switzerland (defendant's exhibit A).

By way of oral evidence, there was offered, on the part of the plaintiff, only the testimony of Benjamin R. Fisher, vice president of the plaintiff company, who explained that a Mettler balance is a precision instrument used in laboratories for the precise weighing of very small quantities of material.

The said Hans H. Mettler, in his affidavit (exhibit 1), states that he is the brother of E. Mettler, the sole owner and proprietor of the establishment which manufactured the instant analytical balances; that he is personally familiar with the manufacture, sale, and distribution of Mettler analytical balances, both for domestic consumption and for exportation; that he is also familiar with the trends and practice

in the precision-instrument industry and of all products manufactured and sold in that industry; that there were no similar instruments manufactured, sold, or offered for sale in Switzerland; that Fisher Scientific Company, the plaintiff herein, was the exclusive selling and distributing agent in the United States for said merchandise; that the prices stated on the respective invoices were the prices actually paid by said Fisher Scientific Company and received by E. Mettler; that all sales of said merchandise are made and consummated at Zurich, Switzerland; that prior to, at, and since the dates of exportation the prices at which E. Mettler freely offered for sale or sold his analytical balances and parts thereof in Switzerland to all purchasers who buy either for their own use or for resale in quantities of one to four of one or assorted models were as follows:

| Model | Price (Swiss francs) |
|-------|----------------------|
| 200A3 | 2,040.00 plus Swiss sales tax |
| 200A4N | 2,140.00 plus Swiss sales tax |
| 100A5M | 2,400.00 plus Swiss sales tax |

and in quantities of five or more of one or assorted models at the following prices:

| Model | Price (Swiss francs) |
|-------|----------------------|
| 200A3 | 1,530.00 plus Swiss sales tax |
| 200A4N | 1,605.00 plus Swiss sales tax |
| 100A5M | 1,800.00 plus Swiss sales tax |

that these prices were in effect until May 6, 1949, and that thereafter they were reduced; that there were no restrictions of any kind on such sales; that parts for analytical balances were freely sold or offered for sale to all purchasers at the prices set forth in the invoices to Fisher Scientific Company; and that the prices thereof were the same to all purchasers regardless of the quantity purchased.

In addition, the said Hans H. Mettler alleged the following, which because of its materiality I quote in full:

Those who bought these Analytical Balances for their own consumption or use and not for resale purchased in quantities of one model to as many as ten of one or assorted models and those who purchased for the purpose of reselling them, bought in quantities of five upward of one model or assorted models. Of all the sales made in the ordinary course of trade in the principal markets of Switzerland, in quantities of five or more of one model or assorted models, to any and all purchasers, that is to say, to purchasers who bought for their own use or consumption, those who purchased them to resell and any other purchaser, by actual count the sales in quantities of five Analytical Balances exceeded and were more numerous than the sales thereof in any other quantity.

The supplementary affidavit of the said Hans H. Mettler merely sets forth the reduced prices at which Mettler analytical balances were freely sold and offered for sale in Switzerland on and after May 7, 1949. As the change in prices occurred subsequent to the

latest date of exportation herein involved, such prices have no bearing upon the issues before me.

Substantially every statement contained in plaintiff's exhibits 1 and 2 is corroborated by the report of the American consul at Zurich, defendant's exhibit A. Attached to said report, as enclosure No. 5, there is a list of sales to Swiss customers, which was furnished to the consul by Mr. Mettler. Under the caption "Retail Transactions" are listed seven sales of one each, six being model 200 A4N, each invoiced at 2,140 Swiss francs, plus 4 per centum retail sales tax or a total of 2,225.60 Swiss francs. The seventh sale is of model 100 A5M, at 2,400 Swiss francs, plus the 4 per centum tax or a total of 2,496 Swiss francs.

Six sales designated as "Wholesale Transactions" are also attached. There are two sales of one balance each, one sale of two balances, and three sales of five or more balances. The prices of these "Wholesale Transactions" correspond with the prices hereinbefore set forth as being the prices of five or more of one or assorted models. Although three of these sales are in quantities of less than five, a special discount of 25 per centum was allowed apparently because the purchaser was the agent of the manufacturer and, as such, entitled to wholesale prices, irrespective of the number of balances ordered at one time.

It is claimed by counsel for the Government that the foregoing evidence is insufficient to overcome the presumption of correctness which attaches to the appraiser's valuation by virtue of section 501 of the Tariff Act of 1930, and that plaintiff has likewise failed to establish by competent evidence values different from the appraised values. This argument is supported by assertions that plaintiff's exhibits 1 and 2 fail to give the dates when the balances about which they speak were freely offered for sale or sold, the names of actual purchasers, the quantities sold, or the prices at which they were sold, citing *Charles Happel, Inc., a/c Mon Fong Wo Co.* v. *United States*, 23 Cust. Ct. 250, Reap. Dec. 7715; *American Shipping Co. (General Electric X-Ray Corp.)* v. *United States*, 29 C. C. P. A. (Customs) 250, C. A. D. 198; and the concurring opinion in *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912.

With this contention the court does not agree. The affidavit before the court (exhibit 1) contains the sworn statement of one fully conversant with all of the facts surrounding the sale of such merchandise as is herein involved. It sets forth the prices at which such merchandise is freely offered for sale and sold to all purchasers in the principal market of the country of exportation, in the ordinary course of trade, prior to, at or about, and since the dates of exportation herein, in quantities of one to four, and in quantities of five or more. It further states that those who bought for their own use and not for resale purchased in quantities of one to ten, and those who bought for resale,

in quantities of five or more, and that of all sales of five or more, whether to consumers, to those who purchased for resale, or to any other purchaser, by actual count, sales in quantities of five were more numerous than sales in any other quantity. In the particular paragraph in which these last-mentioned statements were made, there is no reference to the period of time covered or intended to be covered. However, it is fairly inferable, from the fact that at several places elsewhere in said affidavit, the time is stated to be "prior to, at or about and since the dates of exportation herein," that the statements applied to the period of time which is here pertinent.

While the affiant sets forth his conclusions based upon the facts as he knows them, rather than the facts from which he derives such conclusions, his affidavit is not to be rejected as inadequate evidence in the absence of a showing of facts in conflict therewith. See *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, wherein the court stated:

It is true that the affidavit of said Moncrieff states that sales to retailers for resale are not in the usual wholesale quantities, but this is merely a conclusion by him, drawn from the facts set out in detail in his affidavit. While a statement that a given quantity is or is not a usual wholesale quantity might in some circumstances be regarded as some substantial evidence of the fact, such a statement can have no weight as a statement of fact when all of the facts upon which the statement is made are disclosed. It then becomes merely a conclusion of the witness, which can have no weight with the court in determining what is a usual wholesale quantity.

In the case of *Brooks Paper Co.* v. *United States*, 23 Cust. Ct. 277, Reap. Dec. 7739, it was held that a statement contained in the affidavit of a foreign manufacturer that "the great majority of the sales of matrix-board to purchasers other than consumers were in quantities of 15,000 square meters or more" was sufficient to establish the wholesale quantities from which usual wholesale quantities might be determined. The absence of a disclosure of the facts upon which the statement was based was held not to weaken or vitiate the probative force and effect of such statement.

Defendant points to the list of sales annexed to exhibit A as presenting evidence in contradiction of the conclusions contained in plaintiff's exhibits 1 and 2, especially with respect to that portion of exhibit 1, hereinbefore quoted, which asserts that sales in quantities of five analytical balances were more numerous than sales thereof in any other quantity. It is argued that since the usual wholesale quantity is determined from the major number of sales in wholesale quantities, and since of the thirteen sales listed in said exhibit only three are in quantities of five or more, the major portion of actual sales was in quantities under four.

Were the facts as urged by defendant, the conclusion would, of course, be an inevitable one as the principle of law relied upon is by now well

established. However, it is by no means clear that the list of sales included in defendant's exhibit A contains all of the sales made by the foreign manufacturer during the period with which we are here concerned. At two places in said exhibit, it is explained that enclosure No. 5 contains only *some* of the principal sales made by Mettler during the period from April 14, 1948, to June 7, 1949, to wit, at page 5 and at page 20 of said report. As these are only *some*, and not *all* of the sales made by the manufacturer, they cannot be considered either as establishing *per se* in what quantities the major portion of sales was made, or as refuting the statement in plaintiff's exhibit 1 that the major portion of all wholesale sales was in quantities of five.

One further observation is pertinent herein. Entry in the test case was made at the invoice price of 1,630 Swiss francs, plus a Swiss turnover tax of 4 per centum. It appears from the evidence that a retail sales tax of 4 per centum is imposed upon retailers or consumers; that wholesalers officially registered at the national tax office are not subject to this sales tax; but that wholesalers not officially registered are required to pay a sales tax of 6 per centum. Since the invoice price, plus said 6 per centum tax, is the price at which all purchasers in the principal market of the country of exportation could buy said merchandise, it must be considered the freely offered price. *Adolph Goldmark & Sons Corp.* v. *United States,* 22 C. C. P. A. (Customs) 358, T. D. 47378.

The court therefore finds that:

1. The merchandise, the subject of these appeals for reappraisement, consists of analytical balances and parts exported from Switzerland between September 1948 and March 1949.

2. The principal market in Switzerland for the sale of such merchandise was the city of Zurich.

3. Said merchandise was freely offered for sale and sold in the ordinary course of trade to all purchasers for home consumption in Switzerland.

4. Said merchandise was not freely offered for sale or sold for exportation to the United States.

5. The greatest number of sales of such merchandise, whether for consumption or for resale, or otherwise, in the ordinary course of trade, in wholesale quantities, was of five of one or assorted models of such merchandise.

6. At or about the dates of exportation of the involved merchandise, the freely offered prices of said balances to all purchasers for home consumption in the principal market of Switzerland in wholesale quantities of five of one or assorted models were as follows:

Model 200 A4N_____1,605, plus Swiss sales tax of 6 per centum
Model 100 A5M_____1,800, plus Swiss sales tax of 6 per centum
all of the foregoing with packing included.

7.   Special magnifiers for said Mettler analytical balances were freely offered for sale and sold to all purchasers for home consumption in the principal market of Switzerland, in the ordinary course of trade, irrespective of quantity, at the invoice price, plus the Swiss sales tax of 6 per centum, packing included.

Therefore, the court arrives at the following conclusions of law:

1.   That in the ordinary course of trade the usual wholesale quantities of said analytical balances were five of one or assorted models.

2.   That the Swiss sales tax of 6 per centum is part of the value of said merchandise.

3.   That the proper basis of value for the merchandise in question is the foreign value thereof, and there is no higher export value.

4.   That the foreign value of said Mettler analytical balances, as defined in section 402 (c) of the Tariff Act of 1930, is as set forth in findings of fact numbered 6.

5.   That the foreign value of said special magnifiers for the involved Mettler analytical balances, as defined in section 402 (c) of said act, is as set forth in findings of fact numbered 7.

Let judgment be entered accordingly.