## United States *v.* Fisher Scientific Company

No. 8106.—

Entry No. 175, etc.

### Third Division, Appellate Term

(Decided April 21, 1952)

*Charles J. Wagner*, Acting Assistant Attorney General (*Chauncey E. Wilowski*, special attorney), for the appellant.
*Jerome G. Clifford* for the appellee.

Before Cline, Ekwall, and Johnson, Judges; Cline, J., not participating

Johnson, Judge: This application was filed by the Assistant Attorney General for a review of the decision and judgment of the trial court, *Fisher Scientific Company* v. *United States*, 25 Cust. Ct. 418, Reap. Dec. 7878, wherein it was held that the foreign value of certain

analytical balances and parts imported from Switzerland were as follows:

Model 200 A4N analytical balance, Swiss francs 1,605 each
Model 100 A5M analytical balance, Swiss francs 1,800 each
Special magnifiers for use with analytical balances, Swiss francs 15 each
   all the foregoing plus 6 per centum sales tax, packing included

The Government alleges in 11 counts that the trial court erred, which may be summed up as follows:

First, in finding the foreign value of the merchandise to be as announced by the court, rather than as appraised, which finding was based upon the determination that the usual wholesale quantities of the analytical balances were five of one or assorted models, rather than one or more. Second, in finding and holding that a list showing some, but not all, of the sales made by the manufacturer cannot be considered either as establishing *per se* in what quantities the major portion of sales were made, or as refuting statements on the affidavit submitted by the plaintiff that the major portion of all wholesale sales was in quantities of five. Third, in finding and holding that the special magnifiers in question were freely offered for sale at the invoice price, rather than at the appraised value thereof. And, fourth, that the trial court erred in not granting a motion for rehearing in the interest of justice.

The evidence submitted in this case consists of an affidavit, exhibit 1, filed by the importer, in which it is stated that:

\* \* \* Of all the sales made in the ordinary course of trade in the principal markets of Switzerland, in quantities of five or more of one model or assorted models, to any and all purchasers, that is to say, to purchasers who bought for their own use or consumption, those who purchased them to resell and any other purchaser, by actual count the sales in quantities of five Analytical Balances exceeded and were more numerous than the sales thereof in any other quantity.

The affidavit further discloses that when the analytical balances are sold for consumption by purchasers buying for their own use or for resale in quantities of one to four or assorted models, the prices were as found by the appraiser but when purchased in quantities of five or more of one or assorted models the prices were as returned by the trial court. As for parts, the prices were the same to all purchasers, regardless of the quantity purchased.

Defendant's exhibit A substantially verifies the affidavit of the manufacturer, exhibit 1. The price list attached to exhibit A discloses that when the merchandise is sold in quantities of one to four, the prices are as returned by the appraiser, and when sold in quantities of five or more, the prices are as returned by the court below. The only question at issue in this case, therefore, is whether the evidence is sufficient to establish what constitutes the usual wholesale quantities in which the merchandise is usually bought and sold in Switzerland.

The court below, respecting the lists of sales attached to exhibit A, admitted on behalf of the Government, stated:

\* \* \* However, it is by no means clear that the list of sales included in defendant's exhibit A contains all of the sales made by the foreign manufacturer during the period with which we are here concerned. At two places in said exhibit, it is explained that enclosure No. 5 contains only *some* of the principal sales made by Mettler during the period from April 14, 1948, to June 7, 1949, to wit, at page 5 and at page 20 of said report. As these are only *some*, and not *all* of the sales made by the manufacturer, they cannot be considered either as establishing *per se* in what quantities the major portion of sales was made, or as refuting the statement in plaintiff's exhibit 1 that the major portion of all wholesale sales was in quantities of five. [Italics quoted.]

Counsel for the Government contends that the statement in plaintiff's exhibit 1, heretofore quoted, is a conclusion unsupported by any statement of facts or circumstances, and insists that the list showing *some* sales made by the exporter contradicts the "conclusion" in the affidavit, and, therefore, little weight should have been attached thereto by the trial court. It is further argued by counsel for the Government that had the lower court granted the Government's motion for rehearing for the production of additional evidence, "the court would have before it a complete list of sales made by the exporter during the period involved."

In the case of *United States* v. *Rodier, Inc.*, 23 C. C. P. A. 336, T. D. 48196, the issue to be determined was whether the foreign value was as found by the trial judge, approved by the appellate division, or as returned by the local appraiser. The principal finding by the appellate division was, as stated by our appellate court, as follows:

That the usual wholesale quantities in which such or similar merchandise is sold in the markets of France in the ordinary course of trade is the basic price for 100 meters per color for yarn-dyed fabrics or 300 meters per pattern for piece-dyed fabrics.

The evidence complained about by the Government as mere conclusions in that case consisted of part of an affidavit and corroborating testimony, which the appellate division described as follows:

\* \* \* These affidavits are to the effect that within the personal knowledge of each affiant in the sale of similar merchandise of other manufacturers, including Rodier, the usual wholesale quantity is 100 meters per color for yarn-dyed fabrics, or 300 meters by pattern for piece-dyed fabrics, and that these quantities are the usual wholesale quantities offered for sale, irrespective of the nature of the business of the purchaser.

In holding that the affidavits were properly admitted in evidence and that the statements therein were not to be rejected as conclusions but accepted as evidence, the appellate court stated:

The reason for the admission of the challenged matter in evidence is stated in the decision of the Appellate Division to have been "as tending to establish the methods of doing business in the markets of France."

We think evidence upon the methods of doing business in a country from which merchandise is exported to the United States is entirely proper in order that those having to do with the appraisement of such merchandise may know what "are usual wholesale quantities" and what is the "ordinary course of trade." So far as the admission of the challenged matter is concerned, therefore, the assignments of error on the part of the Government are overruled.

\*        \*        \*        \*        \*        \*        \*

It is urged quite vigorously on behalf of the Government that there was a failure on the part of the importer to show sales or offers of sales in the quantities named "at the time of exportation," and there is one assignment of error in the appeal to us which possibly may fairly be construed to relate to this point. \* \* \*

Upon this point as upon other matters heretofore discussed, we think there is some substantial evidence to support the finding.

See also the cases cited by the trial court, *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093, and *Brooks Paper Co.* v. *United States*, 23 Cust. Ct. 277, Reap. Dec. 7739.

From a careful consideration of the evidence in this case, we are unable to find anything which would tend to refute the statements made in the affidavit, exhibit 1, of the manufacturer that "to purchasers who bought for their own use or consumption, those who purchased them to resell and any other purchaser, by actual count the sales in quantities of five Analytical Balances exceeded and were more numerous than the sales thereof in any other quantity." In fact, it is in no way disputed by defendant's exhibit A. In attaching thereto a partial list of sales in the home market, clearly the purpose was not to establish in which price class the merchandise was usually sold but was to show "*some* of the principal sales made" during the period in question. The report of the market value of analytical balances, admitted in evidence as exhibit A, confirms the very comprehensive and frank affidavit of the manufacturer. It, as well as the affidavit, exhibit 1, is clearly sufficient to overcome any presumption of correctness attaching to the action of the appraiser in returning a value based upon sales of one to four units.

Clearly there was no abuse of discretion by the trial court in denying the rehearing application of Government counsel. Ample time was available in order to perfect any proof necessary to substantiate the Government's position.

For the reasons stated, this court finds as facts that:

1. The merchandise consists of analytical balances and parts thereof shipped from Switzerland between September 1948 and March 1949.

2. The principal market in Switzerland for the sale of such merchandise is Zurich.

3. The said merchandise was freely offered for sale and sold in the ordinary course of trade to all purchasers for home consumption in Switzerland and was not freely offered for sale nor sold for export to the United States.

4. The usual wholesale quantities in which the said analytical balances were sold was five of one or assorted models.

5. At or about the dates of exportation of the involved merchandise, the freely offered prices of said balances to all purchasers for home consumption in the principal market of Switzerland in wholesale quantities of five of one or assorted models were as follows:

Model 200 A4N, 1,605, plus Swiss sales tax of 6 per centum
Model 100 A5M, 1,800, plus Swiss sales tax of 6 per centum
all the foregoing with packing included

6. Special magnifiers for said Mettler analytical balances were freely offered for sale and sold to all purchasers for home consumption in the principal market of Switzerland, in the ordinary course of trade, irrespective of quantity, at the invoice price, plus the Swiss sales tax of 6 per centum, packing included.

Upon the basis of the foregoing findings of fact, this appellate division of the court concludes as a matter of law:

1. That the usual wholesale quantities of said analytical balances in the ordinary course of trade were five of one or assorted models.

2. That the Swiss sales tax of 6 per centum is part of the value of said merchandise.

3. That the proper basis of value for the merchandise in question is the foreign value thereof, there being no export value.

4. That the foreign value of said Mettler analytical balances, as defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, is as set forth in findings of fact numbered 5.

5. That the foreign value of said special magnifiers for the involved Mettler analytical balances, as defined in section 402 (c) of said act, is as set forth in findings of fact numbered 6.

Judgment will be entered affirming the decision and judgment of the trial court.