BROOKS PAPER CO. *v.* UNITED STATES

No. 7739.—
Entry No. 49223.

(Decided September 30, 1949)

*Sharretts & Hillis* (*Edward P. Sharretts* and *Howard C. Carter* of counsel) for the plaintiff.

*David N. Edelstein*, Assistant Attorney General (*Samuel D. Spector*, special attorney), for the defendant.

RAO, Judge: This is an appeal for reappraisement of certain merchandise known as matrix board, exported from Germany on October 7, 1936, and entered in the United States on October 16, 1936.

It appears from the record that the merchandise, shipped by Max Nitzsche & Co. of Obercarsdorf, Germany, to the plaintiff herein, consists of matrix board, imported in sheets, in widths of 20 and 16 inches, 24 inches long, and 0.80 mm. thick. The value stated on the consular invoice is 60 pfennig per square meter. The

merchandise was entered under the provisions of section 503 (b) of the Tariff Act of 1930 (19 U. S. C. § 1503 (b)) at 80 pfennig per square meter, less 3 per centum, packed. The amount representing the difference between the invoiced and entered values was added by the importer because of advances made by the appraiser in previous entries of similar merchandise, a duress certificate having been duly filed. There is nothing in the record to show whether the appraisement was made upon the basis of foreign value or export value.

The importer claims that 60 pfennig per square meter, net packed, which is the price shown on the invoice, is the correct value of this merchandise and represents both the foreign and the export value as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c) and (d)).

Plaintiff called as its witness, Mr. Everett L. Brooks, its president. He testified that he has been with the plaintiff since April 1, 1919, and that the company is engaged in the manufacture and importation of paper and similar products; that he visited several manufacturers of matrix board in Germany, in 1924, 1926, 1929, and 1932, and was familiar with the merchandise in suit and the use thereof, since 1924; that he had seen said merchandise used frequently in newspaper plants and electrotyping plants; that matrix board is used in the stereotyping department of newspapers for reproduction of pictures and of printed plates; and that his company was the exclusive representative in the United States for the sale of the Nitzsche product.

Mr. Brooks further testified that he purchased merchandise similar to plaintiff's exhibit 1, from manufacturers other than Max Nitzsche & Co., for 52 pfennig per square meter during the period from 1934 to 1940; that the price was constant during said period; and that he received written offers for sale of merchandise similar to plaintiff's exhibit 1, from other manufacturers. An offer of sale dated March 9, 1935, from the firm of N. Geissler, of Halberstadt, Germany, was received in evidence as plaintiff's collective exhibit 2. Tests showed that the sample accompanying said offer of sale was commercially interchangeable with plaintiff's exhibit 1, and would serve the same purpose and give the same result. The price quoted by Geissler in said offer was 22 cents in United States currency, less 15 per centum discount, or approximately 47 pfennig. There were no restrictions contained in said offer of sale.

Mr. Brooks further testified that on March 20, 1936, June 12, 1936, and January 12, 1937, he received offers of sale from Clemens Claus, of Thalheim, and that tests were made on the sample of merchandise offered, and the merchandise compared with plaintiff's exhibit 1, as commercially identical and interchangeable. Said merchandise offered for sale would serve the same purpose, give the same result, and would

be a good delivery of merchandise like plaintiff's exhibit 1. The price asked by Claus, was 60 pfennig per square meter. These offers were received in evidence and marked plaintiff's collective exhibit 3.

In addition, Mr. Brooks stated that he had purchased merchandise like plaintiff's exhibit 1 from a Rudolf Schmidtchen, in Germany, but that Schmidtchen's merchandise was a better product; that he paid 60 pfennig per square meter for that merchandise, and there were no restrictions either as to exclusive representation, the quantities required to be purchased, or the resale of said merchandise. The witness averred that he had never paid more than 60 pfennig to anyone during the period from 1934 to 1940.

On cross-examination Mr. Brooks testified that plaintiff had purchased substantial quantities of this matrix board from Rudolf Schmidtchen from 1934 to 1938, in lots as large as 40,000 or 50,000 mats, and always paid for same at the price of 60 pfennig net.

Plaintiff through its counsel then introduced in evidence an affidavit. executed by Hans Nitzsche, and authenticated by the American consul at Berlin, on May 26, 1948. In the affidavit, marked plaintiff's exhibit 4, the said Hans Nitzsche stated, among other things, that. he was a director of Max Nitzsche & Co., and supervised the manu-- facture and sale of matrix board; that his firm was familiar with the manufacture and sale of matrix board for 60 years; that he was familiar with the sales of matrix board by his company to the Brooks. Paper Co., the plaintiff herein, during the years 1934 to 1940, and with the sale of the same merchandise for domestic consumption in Germany and for export to the United States; that the principal markets for the sale of matrix board like that sold to the Brooks. Paper Co. were Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Cologne, Stuttgart, etc.; and that the great majority of sales of matrix board to purchasers, other than consumers, were in quantities of 15,000 square meters or more. There were 12 manufacturers of matrix board in Germany, all of whom were members of the "Verband Deutscher Feinpappenerzeuger e. V., Gruppe E"; that there were four categories of purchasers of matrix board set up by the Verband, to wit, wholesalers who received a discount of 25 per centum, dealers who received a 15 per centum discount, agents whose. discount was 10 per centum, and newspapers; that "newspapers" are ultimate consumers who do not purchase for resale; that "agents" are selling agents of the manufacturer and not purchasers, and the so-called 10 per centum discount to them is in reality an agent's commission; that dealers usually purchase from "wholesalers" and sell only to newspapers; that if a "newspaper" or a "dealer" or any other person placed an order for 15,000 square meters or more of matrix board, he would receive a 25 per centum discount, the same as a.

wholesaler, and that there were no restrictions whatsoever upon the resale of matrix board.

Plaintiff's exhibit 4 further stated that the price of 80 pfennig per square meter, less 25 per centum, includes the costs of all containers and coverings and all other costs, charges, and expenses incident to placing the merchandise in condition, packed, ready for shipment to the United States; that the price fixed by the Verband for matrix board sold for exportation to the United States, from August 1936 through 1940, was 60 pfennig net per square meter; that said price included the cost of all containers and coverings and all other costs, charges, and expenses incident to placing the merchandise in condition, packed, ready for shipment to the United States, and was freely offered to all purchasers of 15,000 square meters or more of matrix board at Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Cologne, Stuttgart, etc.; that the great majority of the sales for export to the United States was in quantities of 15,000 square meters or more; and that there were no restrictions upon the resale of this matrix board in the United States.

Government counsel then moved to dismiss, and the court reserved decision.

Defendant introduced in evidence a report of Treasury Representative Charles Kruszewski, dated January 21, 1935, duly certified and received in evidence as defendant's exhibit A, and then defendant rested.

A perusal of defendant's exhibit A shows that it is an unsworn report and prepared long before the date of exportation of the merchandise. However, in view of the fact that market conditions were constant during the period between 1934 and 1939, counsel for the importer stipulated that he would not object to the report on the ground of remoteness. There is nothing in the first three pages of defendant's exhibit A which is of material aid to the court. Counsel for the importer calls the court's attention to the fact that on page 3 of defendant's exhibit A the treasury representative cites two sales made after September 29, 1934, at a unit price of 22 cents, less 15 per centum, *plus* 2 per centum; and that on the same page, under "Terms of Sale," the same treasury representative states that "The terms of sale granted the importer are a unit price per square meter * * *, less a trade discount of 15%, *less* a cash discount of 2% for advance payment." [Italics mine.] There is no doubt that this discrepancy in defendant's exhibit A indicates, at least to that extent, an inaccuracy in the treasury agent's report, which militates against its acceptance as credible evidence and which the court must consider in weighing all the evidence.

Among other things, the report lists certain sales referred to during the year of 1934, which are enumerated on pages 5 and 6 of exhibit A,

and which definitely appear to be retail sales for home consumption. Since defendant's exhibit A does not contain any statement tending to establish wholesale quantities, I must accept as uncontradicted evidence, plaintiff's proof that the wholesale quantities both for domestic sales and for exportation consist of transactions of 15,000 square meters or more. It would appear, therefore, that the sales enumerated in defendant's exhibit A are not in wholesale quantities, and must be disregarded. The contention of counsel for the plaintiff in this connection, that, in view of the very small quantities involved, these are not sales at all, but are in fact deliveries upon previous contracts of sale in larger amounts, is not without merit, especially in view of the statement preceding the list of sales to the effect that most of the purchasers contract for the sale of large quantities at one time, and deliveries are made on call.

Section 402 (c) and (d) of the Tariff Act of 1930 provides as follows:

(c) FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, *in the usual wholesale quantities and in the ordinary course of trade*, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

(d) EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, *in the usual wholesale quantities and in the ordinary course of trade*, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States. [Italics mine.]

The motion of Government counsel to dismiss the instant appeal is predicated upon the fact that the importer has failed to sustain its twofold burden of establishing that the appraised value was erroneous and of showing what the proper value of the merchandise was, and hence that the presumption of correctness attaching to the appraiser's finding of value has not been overcome.

The presumed correctness of the appraiser's finding of value is not conclusive evidence of such fact. It exists only in the absence of any contradictory evidence. Where, however, sufficient evidence to rebut it has been adduced, the presumption is overcome, and the burden rests with the party relying upon the presumption in the first instance to go forward with additional evidence. *United States* v. *Glendinning, McLeish & Co., Inc.*, 12 Ct. Cust. Appls. 222, T. D. 40229, Wigmore on Evidence, Third Edition, vol. 9, § 2491, p. 289.

The testimony of plaintiff's witness Brooks, coupled with the affidavit of the exporter hereinabove referred to, constitutes sufficient evidence in this respect. Insofar as foreign value is concerned, the affidavit of Hans Nitzsche establishes the principal markets, the wholesale quantities in which the merchandise is usually sold, and the price received for such quantities. Counsel for the Government does not challenge the proof with respect to the principal markets, but claims an inadequacy of evidence to establish the wholesale quantities and the price thereof.

The phrase "in the usual wholesale quantities" appearing in section 402 (c) and (d), *supra,* has frequently been construed both by this and our appellate court. In *Jenkins Brothers* v. *United States,* 25 C. C. P. A. (Customs) 90, T. D. 49093, it was held to refer to the major portion, or greatest number of sales or offers for sale of a wholesale quantity. The statement is made in plaintiff's exhibit 4 that "the great majority of the sales of matrix-board to purchasers other than consumers were in quantities of 15,000 square meters or more." Implicit sanction for the sufficiency of this statement as establishing the wholesale quantities from which the usual wholesale quantity may be determined in the absence of a disclosure of the facts upon which the statement was based, may be gained from the case of *United States* v. *M. Minkus,* 21 C. C. P. A. (Customs) 382, T. D. 46912. In that case, the foreign manufacturer alleged in his affidavit that the "bulk of our business in the Liliput Dictionaries is sold at a price of one mark, less 75% discount." The court therein observed (p. 385):

* * * From this statement, we think it is apparent that he meant that the major portion of their dictionaries were sold at a price of one German mark, less a discount of 75 per centum. This is not the equivalent of saying that the "major portion of the sales or offers for sale" were at the basic price of one German mark, less a discount of 75 per centum, nor have we been able to find any evidence of record to that effect.

For all that appears of record, the major portion of the manufacturer's dictionaries may have been sold to three or four purchasers, in wholesale quantities of 10,000 or more, at the basic price of one German mark, less a discount of 75 per centum; whereas, the rest of its dictionaries may have been sold in wholesale quantities to hundreds of buyers, at the basic price of one German mark, less discounts varying from 33⅓ per centum to 70 per centum, depending upon the quantities purchased.

It is clear from the foregoing that had the statement read "the major portion of our sales" instead of "the bulk of our business" a different conclusion would have been reached.

Nor is it material that the affidavit in the instant case excluded from consideration sales made to consumers. A sale to a consumer is a wholesale transaction only when it is made in the usual wholesale quantities. *American Shipping Co.* (*General Electric X-Ray Corp*). v. *United States,* 29 C. C. P. A. (Customs) 250, C. A. D. 198. Hence

the exclusion of such sales from a computation of the major portion of sales in no way affects the result.

Defendant's exhibit A contains nothing to contradict the statement that the wholesale quantities were 15,000 square meters. The court observes that the treasury representative does not make any statement in his report as to what constitutes wholesale quantities, nor is it apparent therefrom whether the price depends upon the quantity purchased. In *United States* v. *Davies, Turner & Co.*, 13 Ct. Cust. Appls. 547, 550, T. D. 41430, it was considered significant that the treasury representative omitted to include such material and important facts in his report. Hence the sales listed by him, if they be sales in fact, and not deliveries upon contracts of sale in greater quantities, may be disregarded as being less than wholesale quantities.

It is significant, moreover, that although the treasury representative asserts that since January 26, 1934, the market in Germany for matrix board was a restricted one, both because the inland prices have been fixed by the cartel for pine cardboard, including matrix boards, and because dealers must sign an affidavit that they will not underbid the minimum prices, delivery and payment terms (defendant's exhibit A, p. 4), counsel for defendant in his brief (p. 4) concedes that "There are no restrictions whatsoever upon the resale of matrix board. This latter condition eliminates any existence of a controlled market." Such concession was, in my opinion, properly made. The fact that minimum prices are fixed by a syndicate, there being no restriction upon resale, does not create a controlled or restricted market. *United States* v. *Michele Diagonale*, 22 C. C. P. A. (Customs) 517, T. D. 47497.

With respect to export value, the record shows that plaintiff was the exclusive sales representative of the Nitzsche product in the United States. Accordingly, the imported merchandise, *per se*, was not freely offered for sale in the principal markets of the country from which exported, for exportation to the United States. However, there is abundant evidence that similar merchandise, merchandise commercially interchangeable with the imported product, which would serve the same purpose and give the same result, was freely offered to all purchasers for exportation to the United States without any restriction as to exclusive representation, the quantities required to be purchased, or the resale of said merchandise, at 60 pfennig per square meter, less 3 per centum, packed. This proof is not rebutted.

The court concludes that defendant's presumption of correctness has been definitely overcome by the clear, convincing, and positive proof submitted by the plaintiff and that the additional evidence contained in the report of the treasury agent, marked defendant's exhibit A, does not alter this result. Therefore, defendant's motion to dismiss is denied, with an exception to the defendant.

It is the opinion of the court that plaintiff has fully established its case and has proven by a fair preponderance of the credible evidence that the foreign value of this merchandise was 80 pfennig per square meter, less 25 per centum, less 3 per centum, at the time of exportation thereof, October 7, 1936, and was equivalent to the export value of 60 pfennig per square meter, less 3 per centum, as those terms are defined in section 402 (c) and (d) of the Tariff Act of 1930 (19 U. S. C. §1402 (c) and (d)).

The court makes the following findings of fact:

1. That the merchandise the subject of this appeal for reappraisement is matrix board in sheets, in widths of 20 and 16 inches, 24 inches long, and 0.80 mm. thick.

2. That the invoice price of this merchandise is 60 pfennig per square meter, packed.

3. That this merchandise was entered at 80 pfennig per square meter, less 3 per centum, net, packed, because of advances previously made by the appraiser on prior shipments of the same merchandise under the provisions of section 503 (b) of the Tariff Act of 1930 (19 U. S. C. § 1503 (b)).

4. That the principal markets of Germany for the sale of such or similar merchandise were Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Cologne, and Stuttgart.

5. That the wholesale quantity in which the merchandise was usually bought and sold in the ordinary course of trade was 15,000 square meters.

6. That the merchandise was freely offered for sale to all purchasers in quantities of 15,000 square meters both for exportation to the United States and for home consumption at a price of 80 pfennig per square meter, less 25 per centum, less 3 per centum, packed.

Therefore, I arrive at the following conclusions of law:

1. That in the ordinary course of trade, the usual wholesale quantity of said matrix board was 15,000 square meters.

2. That the proper basis of value for the merchandise in question is the foreign value thereof, and there is no higher export value.

3. That the foreign value, as defined in section 402 (c) of the Tariff Act of 1930 (19 U. S. C. § 1402 (c)), was 80 pfennig per square meter, less 25 per centum, less 3 per centum, packed.

Let judgment be entered accordingly.