UNITED STATES *v.* BROOKS PAPER CO.

No. 7975.—

Entry No. 49223.

Third Division, Appellate Term

(Decided March 27, 1951)

*David N. Edelstein,* Assistant Attorney General (*Samuel D. Spector,* special attorney), for the appellant.
*Sharretts, Hillis & Paley* (*Howard C. Carter* of counsel) for the appellee.

Before CLINE, EKWALL, and JOHNSON, Judges

CLINE, Judge: This is an application for review of the decision and judgment of the court below, holding that foreign value, as defined in section 402 (c) of the Tariff Act of 1930, is the proper basis for determining the dutiable value of the merchandise involved herein and that such value is 80 pfennig per square meter, less 25 per centum, less 3 per centum, packed. *Brooks Paper Co.* v. *United States,* 23 Cust. Ct. 277, Reap. Dec. 7739.

The merchandise consists of matrix board, in sheets 20 and 16 inches wide, 24 inches long, and 0.80 mm. thick, exported from Germany on October 7, 1936. It was invoiced at 60 pfennig per square meter, net packed, entered under duress at 80 pfennig per square meter, less 3 per centum, net packed, and appraised as entered.

At the trial Everett L. Brooks, president of Brooks Paper Co., the importer herein, testified that he purchased the merchandise imported by his firm; that in connection with such purchases, he visited Germany and called upon manufacturers of matrix board in 1924, 1926, 1929, and 1932; that he purchased and sold the merchandise involved herein; and that he personally examined samples of the shipment. A sample, which the witness stated was identical with the merchandise from the shipment except as to size, was introduced into evidence as plaintiff's exhibit 1. The witness testified that such merchandise is used in newspaper plants and plants known as electrotyping plants in connection with the reproduction of pictures.

Mr. Brooks stated that his firm arranged with Max Nitzsche & Co., the exporter herein, to be the sole purchaser of the Nitzsche product in the United States; that his firm purchased similar merchandise from other manufacturers; that the price agreed upon be-

tween Brooks Paper Co. and Max Nitzsche & Co. for the merchandise during the period from 1934 to 1940 was 52 pfennig per square meter; that he received written offers of merchandise like plaintiff's exhibit 1 from other manufacturers during that period; that he received an offer from Halberstadter Papier-und Pappenfabriken, dated March 6, 1935; that the samples submitted were tested and found to be interchangeable with plaintiff's exhibit 1; that the price quoted was 22 cents per square meter, less 15 per centum, which was approximately 47 pfennig per square meter; that he received offers from Clemens Claus, dated March 20, 1936, and January 12, 1937, and that a sample shipment was made on June 12, 1936; that the samples were tested and found to be interchangeable with plaintiff's exhibit 1; that the price quoted was 60 pfennig per square meter; that he did not make any purchases of this material; that he purchased merchandise like plaintiff's exhibit 1 from Rudolph Schmidtchen from 1934 through 1939; that samples were tested and the merchandise was found to be commercially interchangeable with plaintiff's exhibit 1, but of a better quality; that the price paid for this product was 60 pfennig per square meter; that he never paid Schmidtchen or any other manufacturer more than 60 pfennig per square meter for merchandise like plaintiff's exhibit 1. The offers from Halberstadter Papier-und Pappenfabriken and Clemens Claus were received in evidence as plaintiff's collective exhibits 2 and 3, respectively.

On cross-examination the witness stated that he was not familiar with the category in which his firm was placed by the German manufacturers between 1934 and 1939; that he was not interested in the German home consumption price; that from 1934, his firm paid for the merchandise on a barter system; that it received no price advantage through this.

Plaintiff then offered in evidence an affidavit of Hans Nitzsche, sworn to May 26, 1948 (plaintiff's exhibit 4). The affiant states therein that he is a director of Max Nitzsche & Co. AG Papier-und Pappenfabrik, Obercarsdorf Bez. Dresden; that said company manufactures and sells matrix board for home consumption and for exportation to the United States; that matrix board is used by newspaper publishers in the production of illustrated sections of the papers; that from 1934 to 1940 there were 12 manufacturers of matrix board in Germany; that they were all members of the "Verband Deutscher Feinpappenerzeuger e. V., Gruppe E"; that the "Verband" set up the following classification of purchasers and fixed the following prices and discounts early in 1934 and that they continued through 1940:

(a) Wholesalers__ 80 Pfennige per square-meter less 25%
(b) Dealers_____ 80 Pfennige per square-meter less 15%
(c) Agents_____ 80 Pfennige per square-meter less 10%
(d) Newspapers__ 80 Pfennige per square-meter net

The affidavit states further that newspapers are ultimate consumers; that the "agents" referred to above are selling agents of the manufacturer and the 10 per centum discount is a selling commission; that the dealers purchase from the wholesaler and the wholesaler sells mainly to dealers; that there are no restrictions upon resale; that the principal markets are Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Cologne, Stuttgart; that "the great majority of sales of matrix-board to purchasers other than consumers were in quantities of 15.000 square meters or more; if a 'newspaper' or a 'dealer', as classified above, or any other person, placed an order for 15.000 squ. meters or more of matrix-board, he would receive a 25% discount the same as a wholesaler"; that the price fixed by the "Verband" for exportation to the United States was 52 pfennig net per square meter from 1934 to August 2, 1936; that from August 2, 1936, through 1940, the price was 60 pfennig net per square meter; that the prices included the cost of all containers and packing and were freely offered to all purchasers of 15,000 square meters or more; that the great majority of the sales for export to the United States was in quantities of 15,000 square meters or more; that there were no restrictions upon resale.

Defendant introduced into evidence a report of Treasury Representative Charles Kruszewski, dated January 21, 1935 (defendant's exhibit A). It is stated therein that the terms of sale granted the importer were a unit price per square meter, regardless of size, thickness, or color, packing included, less a trade discount of 15 per centum, less a cash discount of 2 per centum for advance payment; that the unit price was reduced in December 1934 from $0.24 to $0.22 per square meter, less usual discounts; that since January 26, 1934, the inland prices have been fixed by the cartel for fine cardboard, including as section E, matrix boards; that such prices must be adhered to by manufacturers when selling to dealers and consumers; that dealers must sign an affidavit pledging that they will not underbid the minimum prices, delivery, and payment terms; that dealers receive a trade discount of 15 per centum and consumers pay list prices; that most of the purchasers contract large amounts at a time and delivery is made on call. There follows an analysis of inland sales made between July 3 and November 30, 1934. The sales were in quantities ranging from 3.50 square meters to 495 square meters, at prices ranging from 60 to 90 pfennig per square meter. Trade discounts of 15 per centum were granted in some cases but not in others, apparently having nothing to do with the quantity purchased. From the price list attached to the report, it appears that the prices for different thicknesses were as follows:

Thickness up to and including .45 mm_____Rm .60 per sq m.
Over .45 to and including .6 mm_____ .70 " " "
" .6 " "  " .8 mm_____ .80 " " "
" .8 mm_____ .90 " " "

The court below found that the statement in plaintiff's exhibit 4 that "the great majority of sales of matrix-board to purchasers other than consumers were in quantities of 15.000 square meters or more" was sufficient to establish that the usual wholesale quantity in which this merchandise was sold was 15,000 square meters; that it was immaterial that the statement excluded from consideration sales made to consumers; that defendant's exhibit A contained nothing to contradict the statement that the wholesale quantities were 15,000 square meters; that since the Treasury representative did not make any statement as to what constituted wholesale quantities, the sales listed by him might be disregarded as being less than wholesale quantities. It then held that the presumption of correctness attaching to the appraiser's finding of value had been overcome and found the foreign value as set forth above.

On the record herein, we are not in agreement with the conclusion reached by the court below. There is no evidence to support the finding that the usual wholesale quantity in which the merchandise was sold was 15,000 square meters except the bare statement in the affidavit of Hans Nitzsche (plaintiff's exhibit 4). Such a statement, unsupported by evidence of offers or sales, is a conclusion on the part of the affiant and has little probative value. *Sanders Mfg. Co.* v. *United States*, 5 Cust. Ct. 585, Reap. Dec. 5044; *Golding Bros. Co., Inc.* v. *United States*, 6 Cust. Ct. 964, Reap. Dec. 5272; *United States* v. *Pio Maldonado et al.*, 25 Cust. Ct. 432, Reap. Dec. 7884; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093; *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States*, 28 C. C. P. A. (Customs) 19, C. A. D. 118.

Moreover, the statement in plaintiff's exhibit 4 excludes from consideration sales made to consumers. There is no evidence in the record to indicate whether or not sales to consumers were in wholesale quantities. If they were, they would have to be considered in determining what is the *usual* wholesale quantity. *American Shipping Co. (General Electric X-Ray Corp.)* v. *United States*, 29 C. C. P. A. (Customs) 250, C. A. D. 198; *United States* v. *Richard & Co.*, 15 Ct. Cust. Appls. 143, T. D. 42216; *United States* v. *A. S. Neuberger and American Glanzstoff Corp.*, 19 C. C. P. A. (Customs) 96, T. D. 45241.

In *American Shipping Co. (General Electric X-Ray Corp.)* v. *United States*, *supra*, the court referred to the decision in *Keve & Young* v. *United States*, 11 Ct. Cust. Appls. 94, T. D. 38747, and stated that "the law is well settled by later cases that in the interpretation of the language 'is freely offered to all purchasers * * * in the usual wholesale quantities and in the ordinary course of trade,' sales to users or consumers, if made in wholesale quantities, may be considered in determining foreign value, and we know of no decision by this court or any other appellate court to the contrary."

In *United States* v. *Richard & Co.*, *supra*, the court said (p. 147):

It is argued because sales to wholesalers are all made at the same price that therefore this price thus becomes the wholesale price. But it will be observed that the statute does not thus establish the wholesale price. Section 402 (b) does not provide that the wholesale price shall be the price *to wholesalers*, but the price in the usual *wholesale quantities*. The law is not concerned with the persons who buy, but the manner in which they buy. [Italics quoted.]

The circumstances in *United States* v. *A. S. Neuberger and American Glanzstoff Corp.*, *supra*, are similar to those involved herein. An affidavit of the director of sales of the exporter in that case stated that sales in Germany were made to two classes of customers, wholesale dealers and consumers, and that a trade discount of 2 per centum was allowed to all German wholesale dealers. The court below held that the discount should have been allowed in determining dutiable value. On appeal, the court said (p. 100):

If this affidavit could be construed to the effect that the merchandise referred to was sold in the ordinary course of trade in wholesale quantities in Germany to "wholesale dealers" only, then there is substantial evidence to support the judgment of the lower court. If, on the other hand, the affidavit should be construed to the effect that the merchandise was sold in wholesale quantities to manufacturers and converters as well as to wholesalers for resale, then the judgment below must be reversed, for there is no other evidence in the record to support the judgment.

The court found that the merchandise was sold in wholesale quantities to manufacturers and converters (who were consumers) as well as to wholesalers, and held that the price to consumers was the only one at which all purchasers could buy.

It is well established that the major portion of sales or offers for sale in *a* wholesale quantity constitutes the *usual* wholesale quantity. *United States* v. *M. Minkus*, 21 C. C. P. A. (Customs) 382, T. D. 46912; *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093. Therefore, sales to consumers, if in a wholesale quantity, must be considered in order to determine the usual wholesale quantity. Since the record herein does not disclose what the wholesale quantities were or whether sales to consumers were in wholesale quantities, the usual wholesale quantity cannot be determined.

In a reappraisement case, the plaintiff has the burden of establishing all the elements necessary for the court to make a valid appraisement. *Meadows, Wye & Co. (Inc.) et al.* v. *United States*, 17 C. C. P. A. 36, T. D. 43324; *United States* v. *Malhame & Co.*, 19 C. C. P. A. (Customs) 164, T. D. 45276; *United States* v. *T. D. Downing Co.*, 20 C. C. P. A. (Customs) 251, T. D. 46057; *United States* v. *Gane and Ingram, Inc.*, 24 C. C. P. A. (Customs) 1, T. D. 48264. Where the plaintiff does not establish the usual wholesale quantity in which the merchandise is sold or offered for sale, this burden has not been met.

*Samuel S. Perry* v. *United States*, 18 Cust. Ct. 350, Reap. Dec. 6820; *United States* v. *Guy B. Barham Co., a/c Vincente Peralta C.*, 19 Cust. Ct. 321, Reap. Dec. 7444. We conclude, therefore, that the appellee in the instant case has not met the burden of proof cast upon it.

The plaintiff in reappraisement cases also has the burden of proving what the foreign value is or that no foreign value exists and what the export value is. *United States* v. *Malhame & Co., supra*; *Transatlantic Shipping Co., Inc. (Absorbo Beer Pad Co., Inc.)* v. *United States, supra*. Since the appellee herein has not established what the foreign value is or that no foreign value exists, it is unnecessary to consider the proof in regard to export value.

The appellee herein has failed to establish all of the elements necessary for a valid appraisement, and, since the merchandise was imported and appraised prior to the effective date of the Customs Administrative Act of 1938, the appeal for reappraisement should have been dismissed. *United States* v. *Joseph Fischer et al.*, 32 C. C. P. A. (Customs) 62, C. A. D. 286.

On the record herein, we make the following findings of fact:

1. That the merchandise involved herein consists of matrix board in sheets, 20 and 16 inches wide, 24 inches long, and 0.80 mm. thick.

2. That the principal markets of Germany for the sale of such or similar merchandise were Berlin, Hamburg, Frankfort, Munich, Leipzig, Dresden, Cologne, and Stuttgart.

3. That during the years 1934 to 1940 all of the manufacturers of matrix board in Germany were members of the "Verband Deutscher Feinpappenerzeuger e. V., Gruppe E"; that said "Verband" set up the following classification of purchasers and fixed the following prices and discounts early in 1934 and they continued through 1940:

    (a) Wholesalers_____ 80 pfennig per square meter less 25%
    (b) Dealers_____ 80 pfennig per square meter less 15%
    (c) Agents_____ 80 pfennig per square meter less 10%
    (d) Newspapers_____ 80 pfennig per square meter net

4. That the evidence is insufficient to establish the usual wholesale quantities in which this merchandise was freely offered for sale to all purchasers in the principal markets of Germany.

On these facts, we make the following conclusions of law:

1. That the importer has failed to establish every element necessary for the court to make a valid appraisement.

2. That the judgment below should be reversed and the cause remanded to the court below with directions to dismiss the appeal to reappraisement.

Judgment will be rendered accordingly.