(Reap. Dec. 9086)

AMERICAN EXPRESS CO. *v.* UNITED STATES

Entry No. 739086.

(Decided February 27, 1958)

*Sharretts, Paley & Carter* (*Howard Clare Carter, Richard F. Weeks,* and *Donald W. Paley* of counsel) for the plaintiff.

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector* and *Daniel I. Auster,* trial attorneys), for the defendant.

RAO, Judge: This is an appeal for reappraisement of an importation of matrix board, in sheets measuring 16 or 20 by 24 inches, by 0.65 or 0.80 millimeter. This merchandise was invoiced at 24 cents per square meter, less 15 per centum discount, less 2 per centum for advanced payment. It was entered at reichsmark 0.60 (60 pfennigs) per square meter, net packed, and appraised at reichsmark 0.80 (80 pfennigs) per square meter, less 3 per centum, packed. Apparently, although not specifically so shown, the appraiser's return of value was made upon the basis of statutory foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as originally enacted and in effect at the time of the instant importation. That provision reads as follows:

FOREIGN VALUE.—The foreign value of imported merchandise shall be the market value or the price at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, including the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses incident to placing the merchandise in condition, packed ready for shipment to the United States.

When this case was first submitted for decision, it was the contention of plaintiff that there was no foreign value for such or similar merchandise, and that export value, as defined in section 402 (d) of said act, as represented by the entered value, was the proper value for the instant merchandise. Section 402 (d) provides as follows:

EXPORT VALUE.—The export value of imported merchandise shall be the market value or the price, at the time of exportation of such merchandise to the United States, at which such or similar merchandise is freely offered for sale to all purchasers in the principal markets of the country from which exported, in the usual wholesale quantities and in the ordinary course of trade, for exportation to the United States, plus, when not included in such price, the cost of all containers and coverings of whatever nature, and all other costs, charges, and expenses

incident to placing the merchandise in condition, packed ready for shipment to the United States.

An analysis of the home market situation in Germany, the country of exportation, at the time of exportation of the instant merchandise, as revealed by the oral testimony of Treasury Representative Charles Kruszewski and his report, dated January 21, 1935, with attached exhibits, then indicated that an association or cartel fixed the prices and conditions under which manufacturers of matrix board sold their products for home consumption; that sales were made to only two classes of purchasers, to wit, dealers and consumers; that dealers received a 15 per centum trade discount from the association pricelist, provided they signed a pledge not to underbid the association's minimum prices, delivery, and payment terms; and that prices did not vary with the quantities sold.

Upon that record, it was held, in a decision rendered December 4, 1956, 37 Cust. Ct. 585, Reap. Dec. 8707, that the question of usual wholesale quantities was not an issue in the case, and that, therefore, the decision in the case of *Brooks Paper Company* v. *United States*, 40 C. C. P. A. (Customs) 38, C. A. D. 495, was not determinative of the questions raised by this appeal.

By virtue of the fact that each category of purchaser was charged a price fixed solely because of his status in the trade, it was further held, under authority of the principle expressed in the case of *Glanson & Co.* v. *United States*, 29 Cust. Ct. 508, Reap. Dec. 8182, affirmed in principle, 31 Cust. Ct. 473, A. R. D. 33, that—

* * * Neither the price to consumers nor the price to dealers may, therefore, be said to be one freely offered to *all* purchasers in the principal markets of Germany, within the intendment of the foreign value provision of the tariff law.

Another basis for rejecting home consumption sales as indicative of foreign value, was expressed as follows:

Moreover, since, presumptively, dealers purchase for resale, whereas consumers purchase for their own use and enjoyment, the imposition of terms and conditions upon which resales may be made is, in fact, as urged by plaintiff, "a form of restriction and control which according to settled law deprives the market of that freedom essential to the existence of a dutiable value." The case of *M. V. Jenkins et al.* v. *United States*, 34 C. C. P. A. (Customs) 33, C. A. D. 341, and the authorities relied upon therein, support this proposition.

Insofar as sales for home consumption were concerned, it is thus apparent that the market was neither open nor free, and no one price could be selected as representative of foreign value within the statutory prescription. Nevertheless, it was held that foreign value had not been negatived, for the reason that the provisions of section 402 (c) of the Tariff Act of 1930, *supra*, in effect at the time of the instant importation, as interpreted in the case of *United States* v. *Livingston & Southard, Inc.*, 23 C. C. P. A. (Customs) 214, T. D. 48060, required

proof with respect to sales of such or similar merchandise for exportation to countries other than the United States. The record, as originally submitted, was silent in regard to such sales.

Accordingly, an order was entered, setting aside the submission and restoring· the case to the calendar to afford counsel for plaintiff an opportunity to supply such evidence.

The court regrets that, in so acting, an unnecessary burden has been imposed upon plaintiff to obtain, as it did, an affidavit of a representative of the German manufacturer and exporter of the merchandise at bar.

What was involved in the case of *United States* v. *Livingston & Southard, Inc., supra,* was the question of the usual wholesale quantities in which the subject merchandise was sold in the foreign market, and the court held that for the purpose of resolving that question, under section 402 (c), as originally enacted, *supra,* all unrestricted offers for sale, whether for home consumption or for export to countries other than the United States, ought to be considered. Since usual wholesale quantities derive from the major portion of sales (*United States* v. *M. Minkus,* 21 C. C. P. A. (Customs) 382, T. D. 46912), it is, of course, understandable, under a statute which did not·confine foreign value to sales for home consumption, that all sales in the foreign market would be pertinent; and a failure to offer evidence with respect to sales for exportation to countries other than the United States would constitute an omission in the proof.

Where, however, as in this case, the facts establish a restricted home market, and a lack of a freely offered price to all purchasers in that market, it now seems apparent that evidence with respect to sales for exportation to other foreign countries must be immaterial. Such sales, even if shown to be made to all purchasers in conformity with the requirements of the statute, could, nevertheless, not serve to establish that the entire market, domestic sales and sales for exportation to countries other than the United States included, was open and unrestricted, or that a single uniform price offering was freely made to all purchasers.

It is regrettable that the decision in the case of *Half Moon Manufacturing & Trading Co., Inc.* v. *United States,* 73 Treas. Dec. 1560, Reap. Dec. 4314, affirmed *United States* v. *Half Moon Manufacturing & Trading Co., Inc.,* 2 Cust. Ct. 1006, Reap. Dec. 1005, *Same* v. *Same,* 28 C. C. P. A. (Customs) 1, C. A. D. 115, was not brought to the court's attention, for it was there determined, in a situation which closely parallels the instant one in this respect, that the fact that unrestricted sales were made for exportation to other countries merely added another category of purchasers, namely, buyers for exportation, without proving that such or similar merchandise was freely offered for sale to all purchasers, at a uniform price.

This being so, it must follow that proof as to whether or not such or similar merchandise was freely offered for sale for exportation to other countries could not affect the issues in this case, nor alter the fact that the market was restricted and that prices were related to the status of the purchaser.

The court now finds that there was no foreign value for such or similar merchandise.

On the question of export value, there is in evidence, as plaintiff's collective exhibit 2, the testimony of the late Everett L. Brooks, president of Brooks Paper Company, ultimate consignee herein, adduced during the course of the trial of the case of *Brooks Paper Company* v. *United States, supra,* from which it appears that said company was the exclusive sales agent for the products of the Max Nitzsche & Co. AG. Papierund Pappenfabrik, Obercarsdorf Bez. Dresden, the manufacturer and exporter of the merchandise at bar, and that the price agreed upon by them for merchandise of the thickness of plaintiff's exhibit 1, a sample of the importation, was 52 pfennigs per square meter.

Brooks further testified that, throughout the period between 1934 and 1939, prices remained constant, which fact has been admitted by counsel for defendant at the present trial; that, during that time, he received written offers of sale from M. Geissler of the firm of Halberstadter Papier-Und Pappen Fabriken (plaintiff's collective exhibit 2 in reappraisement No. 116698–A, the *Brooks Paper Company* case, *supra*), from Clement Claus (plaintiff's collective exhibit 3 in reappraisement No. 116698–A), and from Rudolf Schmidtchen, as well as from other manufacturers of matrix board; that he examined samples of the matrix board produced by the three named firms; that he tested such samples to determine thickness, bending properties, and reaction to hot metal, and found them to be commercially interchangeable with the Nitzsche product.

Brooks stated that the price quoted in said exhibit 2 in reappraisement No. 116698–A was 22 cents per square meter, less 15 per centum, or approximately 47 pfennigs per square meter; that Claus' products were offered to him at 60 pfennigs per square meter; that Schmidtchen's merchandise, which was, in fact, a better product, also sold for 60 pfennigs per square meter; and that there were no restrictions either as to exclusive representations, quantities for purchase, or on the resale of the merchandise contained in any of these offers. He had no recollection of ever having paid more than 60 pfennigs per square meter for the same thickness.

It appears from the testimony of Mr. Brooks that his company purchased substantial quantities of the Geissler product prior to 1932, and of the Schmidtchen matrix board between 1934 and 1937, but that it made no purchases from Clement Claus because Nitzsche supplied an equal quality at a better price.

In the present record, there are in evidence, as plaintiff's collective exhibit 3, nine invoices of sales made by Schmidtchen to the Brooks Paper Company at prices which did not exceed 60 pfennigs per square meter.

It seems clear from the recital of the foregoing facts that during the period between 1934 and 1939, which period covers the date of exportation of the merchandise at bar, there was no export value for such merchandise, the importer being the sole and exclusive agent of the exporter, but that merchandise similar in all material respects was freely offered for sale to all purchasers, at prices which were equal to or less than the entered value of reichsmark 0.60 per square meter, and that said prices did not vary with the quantities purchased.

Accordingly, I find that—

1. The merchandise covered by this appeal for reappraisement consists of matrix board in sheets measuring 16 or 20 by 24 inches, by 0.65 or 0.80 millimeters.

2. That, at or about the date of exportation of said merchandise, sales of such and similar merchandise were made in the country of exportation for home consumption to only two classes of purchasers, to wit, dealers and consumers.

3. That an association or cartel fixed the prices and conditions under which manufacturers of matrix board sold their products for home consumption in Germany.

4. That the price at which such sales were made was not affected by the quantities sold, but depend solely upon the category of the purchaser.

5. That dealers received a discount of 15 per centum from the association's list price, provided they signed a pledge not to underbid the association's minimum prices, delivery, and payment terms.

6. That the ultimate consignee was the exclusive sales agent of the German manufacturer and exporter of the instant merchandise.

7. That merchandise commercially interchangeable with the instant merchandise, and similar thereto in all material respects, was freely offered for sale to all purchasers for exportation to the United States at prices which did not exceed reichsmark 0.60 per square meter, without regard to quantities purchased, and without any restrictions on resale.

I, therefore, conclude that—

1. There was no price at which such or similar merchandise was freely offered for sale to all purchasers in the country of exportation, and, therefore, there was no foreign value, as defined in section 402 (c) of the Tariff Act of 1930, as originally enacted.

2. That such merchandise was not freely offered for sale to all purchasers in Germany for exportation to the United States.

3. · That similar merchandise was. freely offered for sale to all purchasers in Germany for exportation to the United States at prices which did not exceed reichsmark 0.60 per square meter.

4. That export value, as defined in section 402 (d) of the Tariff Act of 1930, as predicated upon the price of similar merchandise is the value of the merchandise at bar, and

5. That such value is represented by the entered value.

Judgment will be entered accordingly.