UNITED STATES *v.* HALF MOON MANUFACTURING & TRADING CO., INC.

**No. 4595.**—Invoices dated Schiedam, Holland, September 29, 1934, etc.
Entered at New York October 17, 1934, etc.
Entry No. 738664, etc.

Third Division, Appellate Term

(Decided June 12, 1939)

*Webster J. Oliver*, Assistant Attorney General (*Daniel I. Auster*, special attorney), for the appellant.
*Daniel P. McDonald* for the appellee.

EVANS, Judge: This is an application for review of a decision of a single judge of this court published as Reap. Dec. 4314, wherein he found a value for certain metal bottle caps or capsules imported from Holland and entered at the port of New York during the period from September 14, 1934, to February 11, 1935. The judge below found that the export values as represented by the entered values were the proper dutiable values of the merchandise, sustaining the importer's contention. The goods were entered at the invoice prices. The bottle caps were appraised by the local appraiser at the foreign value as defined in section 402 (c) of the Tariff Act of 1930, which he found to be the price at which such or similar caps or capsules were freely offered for sale for home consumption in Holland on the respective dates of exportation.

The court below found that the sales of such or similar bottle caps to users, consumers, and bottlers in Holland for home consumption were not "freely offered" sales under the provisions of said section 402 (c); that the market was a restricted market within the meaning of the tariff act and the decisions of this court and the Court of Customs and Patent Appeals.

At the outset this court desires to rule on two important questions raised by the Government attorney during the course of the plaintiff's case and at the close thereof. In so doing we quote a summary of the oral testimony as fairly outlined in the importer's brief herein, as follows:

The evidence consists of the oral testimony of the President of the appellee corporation, three affidavits of the three manufacturers of metal bottle caps or capsules in The Netherlands, the country of exportation, the testimony obtained pursuant to Letters Rogatory issued by this Court of two of these manu-facturers, relating to their sales of metal bottle caps or capsules, such as or similar to the instant merchandise, sold for export to the United States and to countries other than the United States, and fourteen Treasury Agents' reports as to the metal bottle caps or capsules manufactured and shipped by these three manu-facturers.

Mr. Adrian Vuyk, President of the appellee corporation, testified that he pur-chased all the metal bottle caps or capsules imported by that concern, during the period from July 1, 1934, to June 16, 1936 (R. 5); that he purchased the merchan-dise covered by these Appeals to Reappraisement (R. 13); that his concern had paid for the metal bottle caps or capsules the prices as stated on the Consular Invoices (R. 13); and that his concern is not the only importer of merchandise produced by the manufacturers of the merchandise at bar (R. 16).

Thereafter four depositions were tendered to the court (Exhibits 5 to 8 inclusive). The Government interposed objections thereto on the ground that the witnesses refused to answer certain interrogatories propounded to them. From an examination of the cases bearing on the question of the refusal of witnesses to answer questions that are

material in a deposition, it would appear that the ordinary procedure for the party objecting to the deposition would be to move to suppress such deposition. However, the objections fairly construed amount to the same thing and we will give them consideration on the theory that what the Government is asking is a suppression of the depositions.

During the course of the argument when counsel for the importer was resisting Government's efforts to suppress, he made the following statement:

I showed the affidavits to Mr. Auster that were offered in evidence at the first hearing, and Mr. Auster courteously agreed to let me see the treasury agents' reports that he contemplates offering in evidence to-day. I was in Mr. Auster's office day before yesterday but he was not there. I saw Mr. Claro, and I told Mr. Claro I came over to look at those treasury agents' reports, and he showed them to me. I found in those treasury agents' reports that copies of these direct interrogatories and cross interrogatories were sent by the appraiser to the treasury attaché in Holland requesting him to interview the deponent, and he has furnished all of the information in answer to these questions as a result of that interview with the treasury attaché, which he did not answer in this deposition. He stated he did not understand, when these interrogatories were presented to him, why this information was required, because my client had said nothing to him. We said nothing or wrote nothing to him. This deposition was simply sent down to the Department of State and transmitted through official channels to our Minister in the Hague and was there presented to a district court of competent jurisdiction.

These statements were not denied; in fact, the record as subsequently made substantiates the same. In view of the fact, therefore, that the special agent was directed to procure and did procure information along the line of the interrogatories and cross-interrogatories, it is the opinion of the court that substantial justice requires that the depositions be admitted in evidence. The testimony can then be weighed and given such weight as it may appear to deserve when considered with the reasons for refusal as outlined by the report of the special agents subsequently offered by the Government. We therefore are of the opinion that the court committed no error in admitting these depositions.

At the close of the importer's case the Government attorney moved to dismiss for failure of proof. Not having stood on this motion but having proceeded with testimony, and it being the duty of the court in proceedings of this character to find value, and there being substantial evidence to support the importer's claim, the motion for a dismissal was properly overruled by the trial court.

This case was tried largely upon documentary evidence which consisted of depositions above noted and a great number of special agents' reports introduced by the Government without any analysis or without pointing out to the court what parts of said reports were relied upon to support the contentions of the Government, so that

we have the laborious task of analyzing these reports in connection with the testimony. We find that the single judge painstakingly performed this service and made a very fair summation of all the testimony, oral and written. We do not think it necessary to review the facts or to state again the results of the testimony. The single judge considered that the appraiser erred in finding that there was a foreign-market value and in appraising at that value, for the reason that the foreign market was a controlled market and therefore did not meet the requirements of section 402 (c) of the Tariff Act of 1930. The statement of the trial judge in that respect is as follows:

Manifestly, it may not be said that in Holland such or similar merchandise to that here involved is *freely offered* for sale to *all purchasers*. Therefore, it may not be held that there exists in that country a foreign value for such merchandise within the meaning of said section 402 (c). And this would be doubly true if I were to accept the view of counsel for the Government that the sales for export to countries other than the United States are restricted sales. If this be true, then all sales in the country of exportation are restricted sales, and no foreign value for said merchandise exists. In either case, it must be held that the appraiser erred in finding a foreign value.

The same would be true even if, as the Government claims, the sales in Holland of similar merchandise to bottlers, users, and consumers should be considered to be unrestricted, as the sales being admittedly restricted as to dealers and exporters, manifestly would not be freely offered sales to all purchasers in Holland, as required by the statute.

From the testimony it appears that sales in the foreign country were made to dealers, those who bought primarily for resale, and to users, those who were consumers and bottlers. The Government in the brief submitted by its attorney states:

For the purpose of this case only, and without agreeing in principle to its accuracy, we do not dispute that the sales to "dealers" are restricted by reason of the control by the manufacturers of the resale prices by such dealers.

We consider this a left-handed admission of what could not well be denied in view of the record. Why the attorney did not make a direct and unqualified admission of the fact so well established, we cannot say. The brief further states:

However, the United States contends that the sales to users, consumers, and bottlers, notwithstanding the agreement of the manufacturers are, nevertheless, not restricted within the contemplation of Congress or the decisions of the United States Court of Customs & Patent Appeals.

Counsel bases this conclusion upon the fact that the sales to consumers are at the same price for the goods whether obtained directly from one of the three manufacturers, or whether said consumers procure their bottle caps from the dealers. He argues that it would be economically prohibitive and poor business to sell at a price less than the one paid for the goods. He further states that the so-called restriction on sales to consumers of bottle caps that are "neutral,"

that is, having no name or trade mark, do not create a controlled market—

for the reason that such caps could not be sold in any event, in the ordinary course of business by the consumers, except at a financial loss to such consumers. Accordingly, such restriction is also useless, purposeless, and ineffectual.

Since when, we would like to ask, has it become the law that a restriction against resale must be considered solely from the standpoint of whether or not the person reselling could make a profit? Are we to infer that if such person could sell at a profit, he would be warranted in breaching his obligation to the manufacturer from whom he bought under an agreement not to resell? Furthermore, the special agent's report shows that discounts were granted to users in proportion to the amount purchased. Possibly the consumer or user might buy in such quantities that he could sell at a profit over what the dealer's price would have been. But that is beside the point. The manufacturer has made a restriction, as shown by Exhibit 36, p. 3, wherein it is stated:

*For users:*
These caps are intended exclusively for your own inland use and are not permitted to be offered and sold to others, nor are they permitted to be exported to foreign countries except on bottles.

We must presume that merchants will keep the contracts they make, for the law presumes the right and not the wrong to exist.

The evidence further shows with reference to the caps bearing the buyer's name or trade-mark that these could be restamped at a slight additional cost.

From the evidence in this case we affirm the facts as found in the single judge's opinion, to wit:

1. That on June 16, 1933, the only manufacturers in Holland of such or similar merchandise to that involved herein made an agreement fixing the prices at which such bottle caps or capsules manufactured by them were to be sold to dealers on and after June 20, 1933.

2. That said agreement provided that in making offers of sale or deliveries it must be expressly stipulated that said dealers are not permitted to resell said bottle caps or capsules below the prices specified therein under penalty of not receiving deliveries from any of said manufacturers.

3. That pursuant to another and subsequent agreement, effective September 1, 1934, it was agreed among said manufacturers to insert in all invoices covering deliveries of said bottle caps or capsules to Dutch buyers, both dealers and users, the following:

These capsules are exclusively for home consumption in The Netherlands and may not be exported except on bottles.

We further find that the single judge correctly interpreted the law as applied to said facts in holding that there was no foreign value for the merchandise in suit as defined in said section 402 (c); that there was a value for export, which was the dutiable value of the merchandise, as represented by the entered values.

Judgment will be rendered accordingly. It is so ordered.