(C.D. 3454)

GEORGE S. BAILEY HAT COMPANY *v.* UNITED STATES

United States Customs Court, Second Division

(Decided May 21, 1968)

*Glad & Tuttle* (*Edward N. Glad* of counsel) for the plaintiff.

*Edwin L. Weisl, Jr.*, Assistant Attorney General (*Mollie Strum, James F. O'Kelly, S. William Barr*, and *Steven R. Sosnov*, trial attorneys), for the defendant.

Before RAO and FORD, Judges

FORD, Judge: The imported merchandise in controversy herein is covered by three protests which were consolidated for trial. The said merchandise is described on the invoices as "Bangkok Paper Hat Bodies," S/No. 3897, and was assessed with duty at $2.04 per dozen and 10½ per centum ad valorem under paragraph 1504(b)(3) of the Tariff Act of 1930, as modified by T.D. 54108, as hat bodies, trimmed.

The plaintiff contends that these hat bodies are not trimmed and, hence, are properly dutiable under paragraph 1504(b) of the said tariff act, as modified by T.D. 53865 and T.D. 53877 at 15 cents per dozen and 15 per centum ad valorem.

The provisions of the statute involved herein are as follows: Paragraph 1504(b)(3), as modified by T.D. 54108:

| Tariff Act of 1930, paragraph | Description of Products | Rates of Duty C |
|---|---|---|
| 1504(b) | Hats, bonnets, and hoods, composed wholly or in chief value of * * * paper * * * whether wholly or partly manufactured: | |
| (3) |    *    *    *    *    *    *    * <br> Blocked or trimmed, whether or not bleached, dyed, colored, or stained (except men's Yeddo hats * * *) | $2.04 per doz. and 10½% ad val. |

Paragraph 1504(b), as modified by T.D. 53865 and T.D. 53877:

| Tariff Act of 1930, paragraph | Description of Products | Rate of Duty |
|---|---|---|
| 1504(b) | Hats, bonnets, and hoods, composed wholly or in chief value of * * * paper * * * whether wholly or partly manufactured (not including any of the foregoing known as harvest hats and valued at less than $3 per dozen); all the foregoing, not blocked, trimmed, or sewed: Wholly or in chief value of paper, * * *: <br>    *    *    *    *    *    *    * <br> Bleached, dyed, colored, or stained | 15¢ per doz. and 15% ad val. |

The record is comprised of the testimony of four witnesses, one of whom testified through interrogatories and cross-interrogatories pursuant to letters rogatory which were translated orally at the trial by a Japanese interpreter.

The first witness for the plaintiff, Joseph H. Fraizer, treasurer for about 20 years, of the George S. Bailey Hat Company, the plaintiff herein, testified that its business was manufacturing men's hats. He was familiar with and identified the invoices covering the three entries of hat bodies involved herein and had brought into court a representative sample of the paper hat bodies involved, stating that, except for color, it was the same in all material respects as the imported Bangkok paper hat bodies. He identified this representative sample as "Our 3897." This was received into evidence (a brown on beige hat body) along with the official sample from customs (a white on black hat body) as plaintiff's collective exhibit 1. He stated that Bangkok hat bodies were imported in three colors, but that they could come in many different colors and combinations. He indicated he did not know how the hat bodies were made.

Following a continuance and on resumption of the trial, it was discovered that the two hat bodies comprising plaintiff's collective exhibit 1, which concededly were representative of the imported merchandise, had been lost. Plaintiff thereupon offered into evidence, a hat body in black and white strands, purportedly similar, and representative as well as illustrative of the lost Bangkok hat bodies. This

was marked plaintiff's exhibit 2 for identification but on objection by defendant was not received in evidence.

At this point in the trial, it was stipulated between counsel that the hat bodies involved herein were not blocked. The record shows that no sewing was involved. This narrowed the issue to a question of whether the hat bodies were or were not trimmed.

Plaintiff called Joseph F. Fritz, customs line examiner at Los Angeles who testified that he was in court when trial of this issue was begun originally. He was familiar with the hat bodies there identified as No. 3897, comprising plaintiff's exhibit 1.

Mr. Fritz stated that following loss of exhibit 1 he had gone to the George S. Bailey Hat Company to see if he could find a sample similar or representative of the lost hat bodies. Plaintiff's exhibit 2 for identification, he stated, resembled the hat of the case merely as having a crown and a brim, that it was not like the hat in the case, but that his memory was not good enough to make an accurate comparison. Mr. Fritz was of the opinion that exhibit 1 consisted of trimmed hats, whereas exhibit 2 was not trimmed; he did not think exhibit 2 was trimmed or decorated because the white straws were an integral part of the hat, different, therefore, from exhibit 1. He reiterated that he could not recall the exact appearance of the hats in exhibit 1 but added that the different colors woven into a pattern on the hats in exhibit 1 were also an integral part of those hats. Plaintiff's counsel admitted to the court that exhibit 2 was not identical with exhibit 1. Mr. Fritz then stated that exhibit 2 was made of Toyo paper of identically the same material used to make exhibit 1. Mr. Fritz thought exhibit 1 was more elaborate and gave an impression of ornamentation. He could not, however, recall the picture of exhibit 1 to his mind, but did recall that it differed from exhibit 2 for identification in that the white strands in exhibit 1 remained on the surface for a greater length before being reintroduced into the weave.

The court at this stage declined to receive exhibit 2 for identification into evidence as similar to exhibit 1 because the witness Fritz had stated repeatedly that his memory of the original exhibit 1 was not good enough to make an accurate comparison.

At the final hearing, Witness Joseph H. Fraizer was recalled by the plaintiff. He had identified the original exhibit 1 hat body 3897 at the first hearing before it was lost.

He identified another hat body (plaintiff's exhibit 3 for identification which was subsequently received in evidence as plaintiff's exhibit 3) as representative of the hat bodies in controversy, not the same, but substantially the same, the white strands being perhaps twice as long on exhibit 1 and spaced further apart, but of the same material.

The interrogatories and cross-interrogatories of Tokuta Oka of Kobe, Japan, owner of the factory which manufactured the imported merchandise were orally translated into English from the witness stand by Tom T. Saki, a registered interpreter of Japanese at the Superior Court in Los Angeles.

The interrogatories insofar as they concern the method of manufacture of the Bangkok paper hat bodies, with particular reference to the white lines on the black background, or brown lines on beige, state the following:

A. First of all, as for material, we use a paper thread which is processed with cellulose. We call this generally cel thread. In other words the cel meaning cellulose. We use this as the material, and there is a stick standing in the center of a round machine. We tie this thread to this stick, and further on the other end of the string we attach a piece of metal. The weight of the metal differs, depending upon the products to be manufactured. The number of threads as such is increased until the number reaches 577. After the number of threads are prepared properly, the stick in the center has a gear on the bottom which turns the stick. The stick is rotated, and the hat is woven while rotating. The height of the hat is mainly four inches high. However, in some case[s] it is requested to be made four and one-half inches. After this is woven, we start weaving the trimming of the hat. This trimming is normally three inches. However, depending upon the request, sometimes they are four inches. By manufacturing as the explained process, we normally have a hat with no designs. In order to change the same, we change the color of the material from white, for instance, to black, and the thread is then mixed with black or white. In some cases we use brown cel thread and keep weaving. With this method, we produce the design. In order to give the main body of the hat a different color, we do this during the process of manufacturing the hat. * * *

By cross-interrogatories, the witness testified substantially that a different color of strand is not added after the hat body is completed; that they cannot add and weave back, and the white line strand for the design is the same material as any other color. The purpose of using different colored strands is to create a design while in process of weaving.

Mr. Fritz, who had testified for the plaintiff earlier as the Government examiner of the line of merchandise, was recalled by the defendant. He stated again that in his opinion plaintiff's exhibit 3 and the lost exhibit 1, although the colors were woven the same way into both hat bodies, differed in that the white strands in exhibit 3 were an integral part of the hat; that in the original or lost sample, to the best of his recollection, some strands were there for decorative purposes. He could not state if they were woven in, not having a clear picture in mind of the original hat. Examining exhibit 3, he gave his opinion

that if the white strands woven in were removed, the hat would be destroyed.

Edward N. Glad testified as a witness for the plaintiff stating that he was present in court as the trial attorney for the plaintiff when exhibits 1 and 2 were introduced into evidence originally. He recalled the physical condition of lost exhibit 1, as being two hats similar in construction to exhibit 3. One was black with white decoration and one was beige with brown decoration. The only difference in appearance between exhibit 3 and the hats in exhibit 1 is with regard to the white thread in the brim of the hat, and in particular the three white threads in the center of the line on exhibit 3. They were exposed on the surface in exhibit 1 for a longer distance before going down to the underside of the brim. The white thread would have the corresponding short appearance on the bottom side of the brim in both exhibits 1 and 3. The white strands were woven into the hat so that on removing the white strand on exhibit 3, an empty space is left.

The hat body designated plaintiff's exhibit 3 for identification was at this stage of the case admitted into evidence over objection by the defendant.

We note from the record that considerable controversy occurred between counsel over the admission in evidence of the black hat body with white strands which is plaintiff's exhibit 3. This was offered as a substitute purportedly similar in appearance to the lost hat bodies theretofore identified as a certain style of hat body No. 3897, and duly admitted into evidence as plaintiff's exhibit 1.

In our opinion, the identity of the hat body designated style No. 3897 was definitely and sufficiently established in the instant record by virtue of the interrogatories propounded to Mr. Oka. His testimony related to an article which was manufactured by his company pursuant to specific style number.

In the light of the foregoing, it is obvious that plaintiff's exhibit 3 is not the basis of our determination of the issue, although it is illustrative, particularly when we note how substantially it coincides with Mr. Oka's testimony as to detail of manufacture of No. 3897.

It is clear from the record before the court that plaintiff and defendant dispute the characterization of certain white cellulose strands which were introduced among black cellulose strands in weaving the black and white hat bodies, which were introduced into evidence as plaintiff's exhibit 1.

Plaintiff claims this is not trimming in the tariff sense. The defendant contends that it is, and that the presumption of correctness attaching to the classification of the collector should prevail.

The only difference we gather from the record, between exhibits 1 and 3, is that the white strands among the black strands in the lost

exhibit 1 were longer on the surface than the white strands in exhibit 3, an effect obtained by turning the strand downward to the under surface at longer intervals.

Whether we use our visual examination of exhibit 3 or rely more importantly on the testimony of the manufacturer, it is obvious that the white strands are an integral part of the hat, no different from the black strands, except for color. We do not consider the varying colored strands to be decoration or trimming.

Adjudicated cases on the subject of trim indicate that trim is something added after the hat body has been finished; that the trim is not an integral part of the hat body.

This is particularly evident in cases involving hats which were held to be trimmed.

In *E. W. Jordan* v. *United States*, 4 Treas. Dec. 73, T.D. 22727, G.A. 4841, a Panama straw hat with only a leather sweat band stitched inside was considered trimmed.

In *F. A. Bonnet* v. *United States*, 4 Treas. Dec. 74, T.D. 22728, G.A. 4842, Mexican hats of variously colored straw, trimmed on the lower crown and outer edge of the brim with wide ornamental bands of the same or similar material as the body of the hat were held properly dutiable as "trimmed hats." That case recited briefly other examples of trimmed hats.

Cases cited by plaintiff's counsel in which trimmings on blouses and fabrics were defined are not here directly pertinent although we note from such cases that the court was of the opinion that everything which trims is not necessarily trimming, and that trimmings are spoken of as additional appendage; and even though the appearance of an article is enhanced or made more attractive by certain treatment, it is not necessarily trimmed thereby. *Starlight Trading, Inc.* v. *United States*, 45 Cust. Ct. 30, C.D. 2192; *Toyomenka, Inc.* v. *United States*, 51 Cust. Ct. 178, Abstract 67918; *Starlight Trading, Inc.* v. *United States*, 54 Cust. Ct. 398, Abstract 69253.

We find that the witness, Tokuta Oka, through the interrogatories and cross-interrogatories identified the same hat body S/No. 3897 without any uncertainty, and proceeded to testify as to the details of its composition and construction which testimony, in our opinion, establishes that the different colors in the merchandise at bar are not appended but are woven in at the time of manufacture.

Objection was made by defense counsel to the answers in the interrogatories given by the foreign witness as not responsive. We note from the record that answers to the three questions in plaintiff's interrogatories were in fact responsive, for they furnished the precise information requested. We note also that in the cross-interrogatories, the translation of questions and answers was diffused.

However, on all those matters material to the issue, the interrogatories were adequate. As to the balance of the questions and answers objected to, we find them of some assistance to the court and will consider their weight accordingly. It is the opinion of this court that substantial justice requires the admission of the deposition of the witness, Mr. Tokuta Oka. (See *United States* v. *Half Moon Manufacturing & Trading Co., Inc.*, 2 Cust. Ct. 1006, Reap. Dec. 4595, and *Amberg, Schwab & Co., Inc., et al.* v. *United States*, 64 Treas. Dec. 433, T.D. 46701.) We, therefore, overrule any objection to the admission of the interrogatories into evidence, and defendant's motion to strike the answers thereto is denied.

We find from the record that the paper hat bodies herein, the subject of this controversy, are not blocked and are devoid of trim. Accordingly, and based on the entire record, the protests are sustained as to the merchandise identified herein and on the invoice as Bangkok paper hat bodies S/No. 3897.

The entries will be reliquidated and judgment will issue accordingly.