(A. R. D. 83)

UNITED STATES *v.* ANTIQUE IMPORT CO.

Entry No. 731272, etc.

First Division, Appellate Term

(Decided January 22, 1958)

*George Cochran Doub,* Assistant Attorney General (*Samuel D. Spector,* trial attorney), for the appellant.

*William Whynman* for the appellee.

Before OLIVER, MOLLISON, and WILSON, Judges

OLIVER, Chief Judge: The appeals for reappraisement enumerated in schedule "A," hereto attached and made a part hereof, relate to certain antique objects, principally chinaware and glassware, imported from West Germany during the years 1952, 1953, and 1954. The merchandise was entered at the unit invoice prices, plus packing, and was appraised at the said unit invoice prices, plus 40 per centum, plus packing.

The case is before us at this time as a review of the decision in *Antique Import Co.* v. *United States*, 38 Cust. Ct. 707, Reap. Dec. 8860, wherein the trial judge sustained the importer's entered value of each of the items in question and held such value in each instance to be representative of foreign value or export value, as those values are defined in section 402 (c) and (d) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, which applied at the time of the importations under consideration.

The decision of the trial judge includes a very thorough and an accurate analysis of the testimony of Mrs. Ursula Celnik, the sole witness to appear in the case. We adopt, by reference, the trial court's review of the record and shall refer specifically only to such phases thereof as are deemed necessary for our disposition of the case.

Omnia, the German exporting firm, was, at the time of exportation of the items under consideration, a partnership in which the witness and her brother-in-law (her husband's brother) were equal partners. The importer, Antique Import Co. (appellee) was owned entirely by the witness' husband. The business of Omnia was the buying and selling of antique objects of glass, porcelain, wood, majolica, earthenware, and bronze. There were other stores or companies like Omnia in Berlin dealing in the same line of merchandise; Berlin was a market for it. As the manager of Omnia, the witness bought, sold, and fixed the selling prices. She purchased the merchandise mostly from private individuals, either at their homes or at the place of business of Omnia. The articles were never bought in large quantities, but only one or two at a time. Sales, also, were made in small quantities, two or three at a time. Nothing was ever bought or sold in large quantities. Sales were unconditional. There was no restriction as to resale, disposition, or use on any article that was sold. Omnia's merchandise was not sold exclusively to the importing firm owned by the witness' husband. On the contrary, sales were made to many customers both in Germany, as well as for export to the United States, and other countries. Prices set forth on the invoices were those at which the merchandise was sold to the Antique Import Co. (appellee), and such prices were the same to everyone. They were not prices paid by Omnia, but included

a profit which, in the case of objects costing 100 marks or more, was 40 per centum, and, on less expensive items, was 30 per centum.

Since the witness' uncontradicted testimony establishes the price at which "such" merchandise was freely offered for sale and sold to all purchasers for home consumption and for export, there is removed from discussion herein any consideration of "similar" merchandise, for, as held in *United States* v. *Irving Massin & Bros.*, 16 Ct. Cust. Appls. 19, T. D. 42714, the words "such" and "similar," as they appear in the definitions of foreign and export values, are not used synonymously, but alternatively.

In the light of uncontradicted evidence herein that prices did not vary according to the quantity purchased, no question of the statutory element of "usual wholesale quantities" is involved. The principle was expressed in *Jenkins Brothers* v. *United States*, 25 C. C. P. A. (Customs) 90, T. D. 49093 (at p. 96), as follows:

Of course, where the price at which an article is sold does not vary according to quantities sold, no question of usual wholesale quantity can arise, and in such case a single article may sometimes be regarded as a usual wholesale quantity.

Elimination from the present issue of the statutory element of "usual wholesale quantities" renders inapplicable herein the case of *G. W. Pleissner* v. *United States*, 16 Ct. Cust. Appls. 507, T. D. 43237, that is cited in appellant's brief. In that case, the sole question before the court was the determination of the usual wholesale quantity of certain woolen cloth from Germany.

The case of *United States* v. *International Forwarding Co.*, 13 Ct. Cust. Appls. 579, T. D. 41436, which is also stressed in appellant's brief, is clearly distinguishable from the matter now before us. There, the primary issue was whether there was a controlled market for the merchandise under consideration. No such question is involved herein.

In view of the rather unusual situation disclosed herein, where the wife was a member of the foreign exporting firm that sold to her husband, the sole owner of the company that imported the merchandise under consideration, it is appropriate to repeat here what the trial judge observed with respect to the condition. He stated:

Mrs. Celnik's testimony was given in the presence of opposing counsel; she was cross-examined at length, but her testimony was not rebutted or discredited, nor was any contradictory evidence presented. Although the situation is unusual in that the seller was a firm in which the wife had an interest and the purchaser was a firm owned by the husband, Mrs. Celnik stated positively that the plaintiff received no reduction in price but paid the same as any other customer would have. The court, having observed the demeanor of the witness, is not disposed to disbelieve her testimony.

On the basis of the record before us, we hold, as the trial judge did, that the importer (plaintiff below) has overcome the presumption of correctness attaching to the appraiser's action and has established

*prima facie* that the values for this merchandise are the unit invoice prices, plus packing.

Accordingly, we find as facts:

1. That the merchandise in question consists of antique objects, principally chinaware and glassware, imported from West Germany during the years 1952, 1953, and 1954.

2. That the merchandise was entered at the unit invoice prices, plus packing, and was appraised at the unit invoice prices, plus 40 per centum, plus packing.

3. That the merchandise was freely offered for sale and sold to all purchasers in the ordinary course of trade in the principal market, Berlin, Germany, for home consumption and for export at the unit invoice prices.

4. That the merchandise was usually sold in quantities of one, two, or three articles, that the price did not vary according to the quantity purchased, and that all sales were unconditional, without restriction as to resale, disposition, or use of the merchandise.

We conclude as matter of law:

1. That the foreign value of the merchandise, as such value is defined in section 402 (c) of the Tariff Act of 1930, as amended by the Customs Administrative Act of 1938, and the export value of the merchandise, as such value is defined in section 402 (d) of the same act, are the same.

2. That the proper basis for determining the value of this merchandise is such statutory foreign or export value.

3. That such statutory foreign or export value in each instance is the unit invoice value, plus packing.

The judgment of the trial court is affirmed.

Judgment will be rendered accordingly.