(R.D. 11603)

DUSHOFF DISTRIBUTING CORP. *v.* UNITED STATES

Entry No. DC 22008, etc.

(Decided December 18, 1968)

*Tompkins & Tompkins* (*Allerton deC. Tompkins* of counsel) for the plaintiff. *Edwin L. Weisl, Jr.*, Assistant Attorney General (*Thomas Fernandes*, trial attorney), for the defendant.

DONLON, Judge: The nine appeals to reappraisement listed in schedule "A", attached hereto and made a part hereof, are consolidated for purposes of trial, the merchandise being the same.

The issue here is the *per se* value of certain wall tiles imported from Japan at the port of Philadelphia. There is no issue as to the basis proper for determining dutiable value. Appraisement was on the basis of export value, and it is export value that plaintiff claims.

The merchandise at bar does not appear on the Final List issued by the Secretary of the Treasury under the Customs Simplification Act of 1956 (T.D. 54521).

The tiles at bar were entered at a value of $0.096 per square foot f.o.b. vessel in Japan. Plaintiff contends that these are defective tiles, of the quality that is known in the trade variously as third grade or commercial grade or grade C tiles, and that $0.096 per square foot is the export value of tiles of that grade.

The official papers are in evidence.

Plaintiff introduced into evidence the testimony of the manager of plaintiff corporation, Mr. Henry Maier, who was recalled and testified also in rebuttal; an affidavit verified August 22, 1967, in Japan by Mr. Sahei Kozakai, who identified himself as sales manager of Kamiyama Ceramic Works, the concern that manufactured the tiles at bar and sold them to plaintiff; and several specimen tiles said to be illustrative of the tiles at bar but not taken from the shipments here in issue.

Defendant introduced in evidence two reports: one dated September 25, 1963, made in Tokyo by William G. Powell, customs representative; and the other dated October 28, 1964, made by William G. Powell, acting regional customs representative in Tokyo.

Plaintiff's proofs identify the merchandise at bar as third grade or commercial quality wall tiles. They are defective. Mr. Kozakai described how they are produced, inevitably, in regular course of manufacturing ceramics.

2. In 1962 my company had accumulated a stock of defective 4¼″ x 4¼″ x 7mm ceramic semi porcelain glazed wall tiles (and it has continued to accumulate from defective manufacture) which were warped, spotted, or off-shaded, or having wedging or crooked edges, or having cracks, not matching any field tiles or trim pieces desired by the trade. These defective tiles consisted of all colors including white and Salt 'n Pepper, with undetermined percentages of Standard,

Second and Third grade tiles, packed into cartons directly after the tiles come out of the kilns without going through the process of sorting. This type of defect can not be avoided or controlled due to the nature of ceramic manufacture where the end products are affected by variations in basic ingredients, humidity, and the temperature in different parts of a kiln. Thus different shades will result from the variations in the level at which the same materials pass through a kiln. Efforts were then made to dispose of such defective tiles, which we referred to as "commercial quality" or "commercial grade" (sometimes called "C" Grade), at the best possible prices to customers in Japan and in the U.S.A. * * * [Exhibit 1.]

The illustrative exhibits in evidence show defects, such as warping, spots and off-shading, cracks and other blemishes. The affidavit of Mr. Kozakai identifies the shipments at bar as tiles of third or commercial grade, that is, defective tiles. Mr. Kozakai averred that the price at which these tiles were sold to plaintiff is available to other "reputable" United States buyers of like quantities.

The invoices, part of the official papers, describe these tiles as of "commercial quality" or as "C grade".

Nothing in defendant's proofs refutes plaintiff's evidence that the tiles at bar are, in fact, such tiles as are known in the trade as third or commercial grade tiles, and the illustrative samples in evidence support the testimony that they are wall tiles of inferior quality because of visible defects.

Defendant's report (exhibit B) appears to refer primarily to a prior Tokyo report which is not in evidence and which is said to have to do with "earthenware, sanitaryware (bathroom accessories) manufactured by Kamiyama Ceramic Works". Reference is also made to the report which is in evidence as exhibit A. Mr. Maier testified in rebuttal that he had examined the agent's report which is exhibit B and that it "contains nothing as far as the commercial or the C grade is concerned." (R. 36.) Defendant did not cross-examine Mr. Maier when he was recalled in rebuttal, and scrutiny of exhibit B bears out his testimony with respect to it.

As to exhibit A, Mr. Maier testified that in subpart A, at page 3, there is mention of commercial quality tiles and that the price there stated is $0.096 per square foot f.o.b., which is the value plaintiff claims. The other quotations for wall tiles in the report are for tiles of standard quality and of second grade. The uncontradicted evidence here is that the merchandise at bar is wall tiles of third grade or commercial quality, and that they are neither of standard (first) quality nor second grade. They are different merchandise.

As to price, Mr. Kozakai stated:

* * * Our quoted price to customers was at $0.10 per square foot F.O.B. Japan but, as is customary in commercial transactions in

Japan, sales were usually made at lower prices except for small quantity sales of less than about 2,000 square feet. * * * [Exhibit 1.]

He further averred that during the period of the transactions at bar sales of such merchandise for domestic use in Japan were at prices from $0.089 to $0.10 per square foot. The average price was below $0.096, according to his affidavit. In the agent's report dated September 25, 1963, filed by defendant (exhibit A), the agent reports that Mr. N. Nonogaki, acting chief of the export section, Kamiyama Ceramic Works, made the following statement to the agent: ". . . that Dushoff purchased at $0.096 rather than at $0.10, since 'they bought all the junk'."

Mere willingness to sell does not constitute satisfactory proof of offers to sell, within the statutory definition. However, the fact is that here there were actual sales of commercial quality tiles. That being so, the court may not consider offers to sell, even if there were proofs here as to offers. *F. B. Vandegrift & Co., Inc.* v. *United States*, 60 Cust. Ct. 965, A.R.D. 239 (Appeal 5327 pending), and cases therein cited.

While sales of commercial quality tiles were also made to domestic purchasers in Japan, those sales are not evidence either of prices or of usual wholesale quantities on sales for export to the United States. These tiles, according to the evidence, are "rejects" for the reason that they are sub-standard and therefore not saleable as either standard or second grade tiles. Evidence as to prices and quantities on sales of different merchandise, that is, tiles that are not defective, is not persuasive either of price or quantities on sales of the commercial grade tiles.

Defendant argues that plaintiff has failed in its burden of proof, in that it has not adduced evidence as to what was the usual wholesale quantity in which such tiles were sold in the ordinary course of trade. Export value, of course, is the price at which merchandise is sold *in usual wholesale quantities.*

Where there is evidence that price does not vary according to quantity, it is well settled that no question of the statutory element of usual wholesale quantity is involved. *United States* v. *Antique Import Co.*, 40 Cust. Ct. 868, A.R.D. 83; *United States* v. *American Express Co.*, 44 Cust. Ct. 779, A.R.D. 120; see also *Jenkins Brothers* v. *United States*, 25 CCPA 90, 96, T.D. 49093.

Here, however, the record is quite clear that prices did vary according to quantity. There is testimony as to two sales of these commercial grade tiles for export to the United States. One sale was of 11,100 square feet at a price of $0.10 per square foot. The other is the sale of 470,820 square feet, the tiles at bar, at a price of $0.096 per square foot.

Mr. Kozakai averred, in his affidavit, that the price was $0.10 per square foot for commercial grade tiles in quantities of 2,000 square feet, and that the price for larger quantities was lower. This is persuasive evidence that 2,000 square feet of commercial grade tiles was the usual wholesale quantity for the merchandise at bar, and there is no evidence to controvert his statement. The quantity plaintiff bought was clearly in excess of the usual wholesale quantity and the price, as Mr. Kozakai said, was lower than the price for quantities of 2,000 square feet.

I find as facts the following:

1. The merchandise at bar consists of defective ceramic wall tiles, known in the trade as commercial or third grade tiles, inferior in quality and marketability to standard (first) and second grade tiles.

2. The tiles at bar were exported from Japan to the United States between December 10, 1962 and October 8, 1963.

3. Such tiles are not included in the so-called Final List, T.D. 54521.

4. Such tiles were freely sold or offered for sale in the ordinary course of trade at the principal market in Japan to all purchasers for exportation to the United States in quantities of 2,000 square feet at the price of $0.10 per square foot. In larger quantities, such as the importations at bar, lower prices were negotiated.

5. Plaintiff bought 470,820 square feet of such tiles at a price of $0.096; this is the merchandise of the entries of these nine consolidated appeals.

I make the following findings of law:

1. The basis for appraisement of the merchandise at bar is export value, as defined in section 402(b), Tariff Act of 1930, as amended by the Customs Simplification Act of 1956.

2. The price of $0.10 per square foot, net packed, f.o.b. Tokyo, is the export value of the merchandise at bar.

Judgment will be entered accordingly.